UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> GEZO GOEONG EDWARDS, *et al.*, <br><br> Defendants. | Criminal Nos. 11-129-1, 2, 11 (CKK) |

MEMORANDUM OPINION
(August 24, 2012)

Defendant Henry Williams is charged by superseding indictment with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. Superseding Indictment, ECF No. 28, at 3. Williams and two co-Defendants, Gezo Edwards and William Bowman, are proceeding to trial.[1] Presently before the Court are Defendant Williams' [366] Motion for Additional *Brady* Materials, [367] Motion for Supplemental Expert Discovery, and [368] First Motion *in Limine*.[2] For the reasons stated below, Defendant's Motion for Additional *Brady* Materials is GRANTED, Defendant's Motion for Supplemental Expert Discovery is GRANTED IN PART and DENIED IN PART, and Defendant's First Motion *in Limine* GRANTED IN PART and DENIED IN PART.

---

[1] See the Court's July 26, 2012 Memorandum Opinion, ECF No. [354], at 2-5, for a more detailed factual recitation.

[2] For ease of reference, the Court shall refer to the parties' pleadings as follows: (1) Def.'s *Brady* Mot., ECF No. [365]; Gov't *Brady* Opp'n, ECF No. [377]; (2) Def.'s Expert Mot., ECF No. [367]; Gov't General Opp'n, ECF No. [380]; Gov't Notice, ECF No. [340]; Gov't Suppl. Notice, ECF No. [384-1]; and (3) Def.'s Mot. *in Limine*, ECF No. [368]; Gov't General Opp'n.

## I. DISCUSSION

 A. *Motion for Additional* Brady *Materials*

  In his first motion, the Defendant seeks "any statements made by any of his alleged co-conspirators in this case about Mr. Williams himself—such as that they do not know him, or that they never interacted with him,"—pursuant to the Government's *Brady* obligations.  Def.'s *Brady* Mot. at 1-2.  The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  The Court has since held that disclosure is mandatory regardless of whether or not the defendant requests the information, and that impeachment evidence must also be disclosed to the defendant.  *United States v. Wilson*, 605 F.3d 985, 1004-05 (D.C. Cir. 2010) (citations omitted).  Here, the Defendant is specifically concerned that factual proffers for pleas agreed to by alleged co-conspirators "discuss, at least in general terms, how these defendants did not know all of the other co-defendants," but have not been disclosed to the defense.  Def.'s *Brady* Mot. at 2.  The Government contends that "[t]he defendant fails to cite any authority to support his claim that a coconspirator's lack of knowledge of the accused's participation in a conspiracy constitutes exculpatory or favorable material," and "and his claim that the information is favorable is both conclusory and speculative."  Gov't *Brady* Opp'n ¶¶ 2,3.  The Court disagrees.

  Several days after the Defendant filed his motion, the D.C. Circuit reversed the conviction of Alvin Gaskins for conspiracy to distribute narcotics.  *United States v. Gaskins*, No. 08-3011, 2012 WL 3289779 (D.C. Cir. Aug. 14, 2012).  Gaskins was tried with three co-defendants on charges that the defendants were members of a nearly five-year narcotics

distribution conspiracy in Virginia, Maryland, and the District of Columbia. *Id.* at *2. The jury convicted Gaskins of conspiracy to distribute between 100 grams and one kilogram of heroin. *Id.* at *5. In reversing Gaskins' conviction for insufficient evidence, the court found a complete lack of affirmative evidence that Gaskins "knowingly joined the narcotics conspiracy or had the specific intent to further its aims," and noted that "[n]one of the [eight] cooperating witnesses testified that Gaskins was involved in their drug trafficking operation." *Id.* at *6. The court emphasized that "given the scope of the government's investigation and the role its witnesses played in the conspiracy, any reasonable jury should have wondered why" the government was unable to produce affirmative evidence of (1) Gaskins' alleged involvement in the conspiracy; or (2) Gaskins' intent to further the alleged goals of the conspiracy. *Id.* at *7.

The *Gaskins* decision demonstrates that the information the Defendant seeks may support his defense by, among other things: (1) calling into question the Defendant's involvement in the charged conspiracy generally; and (2) undermining any evidence that the Defendant possessed the requisite knowledge and/or intent for the conspiracy offense charged. To the extent the Government has "affirmative evidence" of Williams' involvement in illicit activity with Bowman, the failure of one or more co-conspirators to identify Williams as a member of the conspiracy may or may not support a defense theory that Bowman and Williams were engaged in a separate relationship. Information that numerous and/or significant co-conspirators did not affirmatively identify Williams as a member of the charged conspiracy reasonably can be expected to raise questions in the minds of the jurors and aid Williams' defense. *Id.*; *cf. United States v. Wilson*, 160 F.3d 732, 738 (D.C. Cir. 1988) (noting that where several witnesses were offered testimony regarding a defendant's involvement in a conspiracy to commit murder, the absence of any testimony as to the defendant's knowledge and intent was "telling").

Furthermore, neither the Government nor the Court is in a position to conclusively determine at this stage of the proceedings that the purported failure of one or more co-conspirators to name Williams as a member of the conspiracy will not be favorable to the Defendant in preparing his defense. As the District of Columbia Court of Appeals explained,

> It should by now be clear that in making judgments about whether to disclose potentially exculpatory information, the guiding principle must be that the critical task of evaluating the usefulness and exculpatory value of the information is a matter primarily for *defense counsel*, who has a different perspective and interest than the police or prosecutor. It is not for the prosecutor to decide not to disclose information that is on its face exculpatory based on an assessment of how that evidence might be explained away or discredited at trial, or ultimately rejected by the fact finder.

*Zanders v. United States*, 999 A.2d 149, 163-64 (D.C. 2010) (emphasis added). Denying the Defendant access to this information despite multiple grounds on which it might assist his defense would not comport with the notion of "elementary fairness" underpinning the *Brady* disclosure requirement. *United States v. Agurs*, 427 U.S. 97, 111 (1976). The Court finds the Defendant has made a sufficient showing that the information sought may be favorable to his defense, and therefore must be produced pursuant to the Government's *Brady* obligations.

    B.    *Motion for Supplemental Expert Discovery*

The Defendant's second motion seeks supplemental disclosures from two of the Government's Experts: Detective Joseph Abdalla and FBI Special Agent Scott Eicher. Pursuant to the Court's June 1, 2012 Minute Order and Federal Rule of Criminal Procedure 16(a)(1)(G), on July 20, 2012,[3] the Government filed a notice of its anticipated expert witnesses. The notice identified several witnesses—Detective Joseph Abdalla (narcotics expert), one or more Drug

---

[3] The Government's notice was initially filed on July 20, 2012, and docketed as pertaining to all defendants named in the Superseding Indictment. It appears the Clerk of the Court removed the notice and required the Government to re-file the notice as to the remaining defendants only. The Government subsequently re-filed the notice on July 23, 2012.

Enforcement Administration Forensic Chemists, Aimee Quilia (FBI fingerprint specialist), Arnold J. Esposito (firearms and toolmark examiner), and Special Agent Scott Eichert (cell site information expert)—and provided a "summary" of their qualifications and anticipated testimony. The Defendant contends that "[t]he Government's filing paints with a broad brush by largely describing only in general terms the subject areas these witnesses are expected to touch on," without providing sufficient insight as to the *substance* of each witness's testimony. Def.'s Expert Mot. at 2. On August 22, 2012, twelve days after the Defendant filed his pretrial motions, the Government provided a supplemental notice of expert witnesses, disclosing FBI Special Agent John Bevington, who may "supplement the anticipated expert testimony of Detective Joseph Abdalla." Gov't Suppl. Notice at 1. Given the timing of the Government's disclosure, the Defendant did not have an opportunity to address the description, but the Court shall address Agent Bevington's potential testimony in the context of the Defendant's objection to the Government previous expert disclosure.

The Defendant is correct that Federal Rule of Criminal Procedure 16(a)(1)(G) requires more than just a summary of the topics an expert witness may address; the rule requires the Government to "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." However, in light of the Government's opposition, it is clear that at least some of the Defendant's dissatisfaction with the Government's Notice arises from (understandable) confusion as to whether Detective Abdalla and Special Agent Eicher plan to testify regarding various topics generally, or provide opinions specific to the facts of this case. Based on the clarification provided by the Government, the Court finds the disclosure for Special Agent Eicher complies with the requirements of Rule 16(a)(1)(G), but additional detail is necessary for several topics to be addressed by Detective Abdalla, and potentially Special Agent

Bevington.

### 1. Special Agent Scott Eicher

The Government's initial notice stated that it may call Special Agent Eicher as "an expert on information obtained pursuant to judicial orders authorizing the government to obtain cell site information and to authorize the monitoring of Global Positioning System ("GPS") information related to the defendant's cellular telephone." Gov't Notice at 6. The Government explained in its opposition that Special Agent Eicher will provide "[a]n understanding of what [cell site information] is, how it is gathered and how it is used by law enforcement." Gov't General Opp'n at 13. This information may be helpful to the jury in understanding the cell site information that will be referenced by other Government witnesses. From the notice and the Government's opposition, it would appear that Special Agent Eicher's testimony will not be specific to this case. To the extent Special Agent Eicher will testify generally about what cell site information is and how it is often used by law enforcement, the Government's initial notice provides a detailed overview of his testimony. Gov't Notice at 9-10. To the extent Special Agent Eicher will testify regarding cell site information collected during the investigation of the Defendants or other data that is specific to this case, the Government must supplement its notice to indicate the specific opinions Special Agent Eicher will offer by no later than **September 5, 2012**.

### 2. Detective Joseph Abdalla

The Government indicated that it expects to call Detective Abdalla as an expert regarding numerous aspects of the drug trade, including "the modus operandi of drug traffickers in Washington, D.C.," "the use of surveillance techniques," the differences between crack and powder cocaine, and "the procedures used by the Metropolitan Police Department and the FBI

during narcotics investigations." Gov't Notice at 2-4. In its opposition, the Government further explained that Detective Abdalla's testimony "will address various relevant aspects of the illegal drug trade in general – not the specific evidence of the charged drug conspiracy in this case." Gov't General Opp'n at 12-13.

From this perspective, the Government's disclosure is, for the most part, adequate. For certain topics, the notice states in detail Detective Abdalla's opinions, such as that "drug trafficking organizations generally compartmentalize the functions of the various participants in the organization," and "drug traffickers routinely refer to drugs, drug quantities, and cash by using seemingly innocuous words or phrases." Gov't Notice at 2. The notice also specifies that Detective Abdalla will opine that the possession of crack cocaine in specific quantities, namely 100 grams, 1/4 kilogram, and 1/8 kilogram, are consistent with "possession for distribution purposes." *Id.* at 3-4. However, additional disclosure regarding Detective Abdalla's opinions may be required in several topic areas, depending on the scope of Detective Abdalla's testimony.

First, the Government must supplement its disclosure as to Detective Abdalla's testimony regarding "the quantitative and qualitative analysis of the narcotics evidence by the Drug Enforcement Administrations ("DEA") and the strength of the substance." Gov't Notice at 4. The Government's supplemental disclosure shall indicate whether Detective Abdalla will address the DEA laboratory analysis of narcotics in this case, and if so, what opinions Detective Abdalla intends to provide. Second, if Detective Abdalla plans to offer testimony regarding the value of narcotics in various quantities, the Government must supplement its disclosure to indicate the precise opinion(s) Detective Abdalla may offer. Third, the disclosure regarding Detective Abdalla's proposed testimony regarding "standard law enforcement techniques," Gov't Notice at 3, is acceptable if Detective Abdalla will testify generally about such investigative tools. If

7

Detective Abdalla intends to opine regarding specific techniques used in this case, the Government must supplement its disclosure. Fourth, the disclosure concerning chain of custody procedures within the Metropolitan Police Department ("MPD") is sufficient if Detective Abdalla will simply opine regarding MPD's chain of custody procedures. To the extent Detective Abdalla will address the chain of custody of narcotics in this case, including for example, any heat-sealed envelopes, the Government shall supplement its disclosure. Similarly, if Detective Abdalla intends to opine regarding the use of cellular telephones in this case, the Government must disclose his opinions to the Defendants. Ultimately, if Detective Abdalla may offer opinions or testimony regarding any issues specific to the charged conspiracy, the Government shall supplement its disclosure.

      The Court also notes that at least one topic area referenced in the Government's initial notice are irrelevant to this case or outside the scope of Detective Abdalla's purported area of expertise. Specifically, Detective Abdalla shall not be permitted to testify "that cocaine is primarily produced in Columbia, Peru, and Bolivia, and then shipped to one of several transition countries, notably Guatemala, El Salvador, and Honduras, before being imported into the United States and is imported into the United States." Gov't Notice at 3. The Government shall also ensure that Detective Abdalla's testimony regarding the methods of transporting narcotics from other locations in the United States to the Washington, D.C., metropolitan area, concerns only the techniques purportedly used as part of the charged conspiracy. *Id.* Therefore, by **September 5, 2012**, the Government shall submit a revised disclosure of Detective Abdalla's testimony providing additional detail in the areas identified above, and omitting the topics about which Detective Abdalla will not be permitted to testify.

### 3. Special Agent John Bevington

The Government's supplemental notice of expert testimony indicates the Government may call Special Agent Bevington to testify "regarding the interpretation of the coded and disguised language included in the wiretap conversations and during controlled buys." Gov't Suppl. Notice at 1. To the extent Special Agent Bevington will offer testimony regarding coded and disguised language based on his personal knowledge of this alleged conspiracy, he may do so as a lay witness, and no further disclosure is required. *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011). If Special Agent Bevington intends to provide testimony based on "knowledge derived from previous professional experience," the Government must specifically disclose the opinions Special Agent Bevington will offer, and the bases for those opinions as required by Rule 16(a)(1)(G). *Id.*

## C. *First Motion* in Limine

The Defendant's First Motion *in Limine* identifies two issues: (1) the use of transcripts of intercepted telephone calls; and (2) the Government's use of "pattern" or "habit" evidence at trial. First, the Court shall allow the jurors to use the transcripts during trial and deliberations while listening to the recordings of intercepted calls, but shall set forth a procedure for the defendants to object to the Government's transcripts. Second, the Government does not seek to introduce "pattern" or "habit" evidence under Federal Rule of Evidence 406.

### 1. Transcripts

The Defendant raises four objections to the Government's intention to introduce transcripts of intercepted telephone calls into evidence during trial. First, the Defendant argues that the transcripts "are not authenticated, original evidence, but only the interpretation of that original evidence by persons not subject to cross-examination, and the jury's focus should be on

9

the calls themselves." Def.'s Mot. at 1.  The D.C. Circuit has "upheld the practice of giving the jury a transcript to help follow a tape recording played during trial so long as procedures are followed to ensure that the jury does not rely on one party's version of the transcript instead of the tape recording." *United States v. Holton*, 116 F.3d 1536, 1541 (D.C. Cir. 1997).  Therefore, subject to the procedures outlined below, the Court shall allow the Government to use transcripts as an aid to the jury in listening to intercepted telephone calls.

Second, the Defendant argues that "[a]t most, these transcripts should only be used as informal aids that jurors can reference while hearing the calls – not as evidence admitted and taken back into the jury room." Def.'s Mot. at 1. The D.C. Circuit addressed this specific point in *Holton*, noting

> Certainly a transcript can be helpful when the jury listens to replays of tape recordings during deliberations as well as during trial. Indeed, it might well confuse the jurors to permit them to use transcripts as a guide during trial, but not during deliberations. Moreover, without a transcript to guide them, the jury could find itself involved in repetitious and time consuming replaying of unintelligible recordings. Thus, we agree with the other circuits that have held it is within the district court's discretion to permit the jury to use transcripts during deliberations.

*Holton*, 116 F.3d at 1541.  In order to avoid potential confusion and inefficiency, the Court will permit the jury to use the transcripts as a guide when replaying recordings during its deliberations.

Third, the Defendant "reserves the right to object to the specifics of the Government's proffered transcripts." Def.'s Mot. *in Limine* at 1. "[T]he best practice remains for the parties to devise a stipulated transcript." *Holton*, 116 F.3d at 1542.  In the event the parties are unable to stipulate to transcripts for all relevant recordings, pursuant to the Court's July 30, 2012 Order, ECF No. [358], the parties are required to submit a joint notice of any outstanding disputes regarding the transcripts by no later than **August 31, 2012**. *Id.* at 2.  The joint notice shall

indicate: (1) the precise dispute(s) between the parties; (2) whether the defendant(s) intend to offer alternative transcript(s); and (3) if the defendant(s) intend to offer alternative interpretations of the recordings, whether the parties intend to introduce one transcript containing both versions of the disputed portions of the recording or two separate transcripts. *Holton*, 116 F.3d at 142-43.

Fourth, the Defendant claims that "the Government's use of ellipses and designated portions of calls in its transcripts are wholly inappropriate – under the rule of completeness." Federal Rule of Evidence 106 embodies the "rule of completeness," providing that "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." By no later than **September 5, 2012**, the Defendants shall each file a notice indicating which, if any, portions of recordings that the Defendants believe should be played in addition to the excerpts the Government intends to play, and why the additional portions should be played for the jury. *See, e.g.*, *United States v. Edmonds*, 52 F.3d 1080, 1111 (D.C. Cir. 1995) (noting the Rule of Completeness does not automatically require the admission of the entirety of a conversation be introduced in all cases).

The D.C. Circuit's analysis in *Holton* was guided by two overarching concerns: (1) that the defendant(s) be provided sufficient opportunity to object to the accuracy of the transcripts; and (2) that the jury not rely on the transcript as evidence of the recorded conversation, but rather use the transcript as merely an aid.  In this case, the defendants have been provided copies of and can raise objections to the transcripts well in advance of trial.  The Court shall instruct the jury regarding the purpose and function of the transcripts. *Holton*, 116 F.3d at 1543.  Additionally, during deliberations, the transcripts will only be provided to the jury upon a request to re-listen to the recordings.  The jury shall not be permitted to review the transcripts without listening to

the relevant recordings. *Id.* at 1541 (describing *United States v. Strothers*, 77 F.3d 1389 (D.C. Cir. 1996)). During the status hearing on September 7, 2012, the parties shall be prepared to address whether or not the transcripts should be admitted into evidence. *See Holton*, 116 F.3d at 1541-42 (noting several circuits have approved of courts allowing juries to review transcripts during deliberations where the transcripts were not admitted into evidence). This decision affects all co-Defendants, not just Mr. Williams.

### 2. Pattern or Habit Evidence

The Defendant's motion *in limine* also takes issue with the Government's "plan[] to attempt to prove Mr. Williams' guilt in this case by showing that his interactions are consistent with Mr. Bowman's 'pattern' of dealing with his other illegal drug customers." Def.'s Mot. at 2. The Defendant argues this evidence should be excluded for three reasons: (1) the evidence does not meet the requirements of Federal Rule of Evidence 406; (2) the Government's attempts to establish a pattern or habit on the part of Defendant Bowman "will waste considerable time and cause delays," Def.'s Mot. *in limine* at 3; and (3) the evidence is "highly prejudicial" insofar as it seeks to show Defendant Williams is guilty by association, *id*. None of these arguments warrant exclusion of the evidence in question at this time.

The Government indicated in its opposition that it will not seek to introduce any evidence of a pattern, habit, or routine pursuant to Rule 406. Gov't General Opp'n ¶ 11. The Government indicates that it may seek to introduce evidence of Bowman's dealings with other alleged co-conspirators as, among other things: (1) circumstantial evidence of the Defendant's knowledge of and participation in the conspiracy, *United States v. Martinez*, 476 F.3d 961, 969 (D.C. Cir. 2007); and (2) intrinsic evidence of the conspiracy, *see United States v. Badru*, 97 F.3d 1471, 1474-75 (D.C. Cir. 1996). Moreover, "[d]rugs distributed by a co-conspirator in furtherance of a

12

conspiracy are attributable to a member of the conspiracy so long as the distribution was 'reasonably foreseeable' to that member." *United States v. Wilson*, 605 F.3d 985, 1036 (D.C. Cir. 2010) (quoting *United States v. Childress*, 58 F.3d 693, 722 (D.C. Cir. 1995)). Thus, to the extent the Government is able to show Defendant Williams was a member of the conspiracy, the evidence about which Williams complains will not be unduly prejudicial, misleading, confusing, or cumulative. Nor will it cause undue delay. Rather, it will be relevant evidence of acts that the Government may succeed in attributing to Williams as reasonably foreseeable aspects of the conspiracy. Accordingly, based on the current record, exclusion of this evidence is not appropriate under Federal Rule of Evidence 403.

## II. CONCLUSION

In his first motion, the Defendant seeks additional information from the Government regarding factual proffers agreed to by co-conspirators in this case. This information may be helpful to the Defendant's defense in several ways, therefore the Defendant's motion will be granted. Defendant's second motion requests further disclosure of potential testimony from the Government's expert witnesses. For the most part, the Government's disclosure complies with the Federal Rules of Criminal Procedure, but the Court shall require the Government to provide more detail in certain areas, particularly for those experts that will opine as to specific aspects of the alleged conspiracy in this case. Finally, Defendant's motion in limine takes issue with the Government's proposed use of transcripts to accompany audio recordings of intercepted telephone conversations, and the Government's "pattern" or "habit" evidence. The Court shall permit the use of the transcripts subject to certain procedures, and the Government is not seeking to admit "pattern" evidence as described by the Defendant. Accordingly, Defendant Williams' [366] Motion for Additional *Brady* Materials is GRANTED, [367] Motion for Supplemental

Expert Discovery is GRANTED IN PART and DENIED IN PART, and [368] First Motion *in Limine* is GRANTED IN PART and DENIED IN PART.

An appropriate order accompanies this Memorandum Opinion.

                                                      */s/*
                                      **COLLEEN KOLLAR-KOTELLY**
                                      UNITED STATES DISTRICT JUDGE